**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PATRIARCH PARTNERS MANAGEMENT GROUP, LLC,<br><br>                                        Plaintiff,<br>        - against -<br><br>180S, INC.,<br><br>                                        Defendant. | ECF Case<br><br>20 Civ. 6905<br><br>Removed from:<br><br>Supreme Court of the State of New York, County of New York<br><br>Index No. 653092/2020<br><br>**NOTICE OF REMOVAL** |

        PLEASE TAKE NOTICE that Defendant 180s, Inc. ("180s"), hereby removes Case No. 653092/2020, filed in the Supreme Court of the State of New York, New York County (the "State Court Action"), to the United States District Court for the Southern District of New York.[1] This action is removable pursuant to 28 U.S.C. §§ 1332(a) and 1441(a) on the basis of diversity jurisdiction.  It is also removable pursuant to 28 U.S.C. §§ 1334(b) and 1452(a) because it "arises in" and is "related to" ongoing proceedings under Title 11 of the United States Code (the "Bankruptcy Proceedings") before the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), and because the Bankruptcy Court has inherent jurisdiction to hear it.  Several facts compel this conclusion: 180s is a portfolio company and affiliate of the debtors in the ongoing Bankruptcy Proceedings, and is subject to a sale and monetization process that is currently being overseen by the Bankruptcy Court to maximize the value of the debtors' estate; Plaintiff is also an affiliate of the debtors and a party to the Bankruptcy Proceedings; and

---

[1] A true and correct copy of all records and proceedings in the State Court Action is attached as Exhibit 1.

the alleged management fees and indemnification obligations at issue in the State Court Action are the subject of a settlement order issued by, and an ongoing adversary proceeding before, the Bankruptcy Court.

## I.   RELEVANT FACTS

On March 11, 2018, a group of entities then controlled and operated by Lynn Tilton (collectively, the "Zohar Funds") filed voluntary Chapter 11 petitions that commenced the Bankruptcy Proceedings pending before United States Bankruptcy Judge Karen Owens.[2]  180s is a portfolio company and affiliate of the Zohar Funds.[3]  180s is a Delaware corporation with its principal place of business in Maryland.  Plaintiff is a limited liability company ultimately owned and operated by Ms. Tilton; Plaintiff and several related entities and funds, along with Ms. Tilton herself, are parties to the Bankruptcy Proceedings, where they are referred to as the "Patriarch Stakeholders."[4]  Ms. Tilton is a citizen of Florida.

A key objective in the Bankruptcy Proceedings is the monetization via sale or refinancing of the Zohar Funds' portfolio companies, including 180s, to maximize the value of the Zohar Funds' estate.  The Bankruptcy Court has issued various orders relating to the monetization of 180s and other portfolio companies.  On May 21, 2018, the Bankruptcy Court issued an order

---

[2] The term "Zohar Funds" refers to the following entities: Zohar III, Corp.; Zohar II 2005-1, Corp.; Zohar CDO 2003-1, Corp.; Zohar III, Ltd.; Zohar II 2005-1, Ltd.; Zohar CDO 2003-1, Ltd.  Each of these entities filed a Chapter 11 petition in the Bankruptcy Court on March 11, 2018.  These Chapter 11 cases are jointly administered under the caption *In re: Zohar III, Corp.*, 18-10512 (KBO) (Bankr. D. Del.).

[3] Specifically, 180s is owned by Zohar II 2005-1, Ltd., a debtor in the Bankruptcy Proceedings, and other individuals and entities not involved in the Bankruptcy Proceedings.

[4] The following entities affiliated with Ms. Tilton are parties to the Bankruptcy Proceedings: Ark Angels, LLC; Ark Angels II, LLC; Ark Angels III, LLC; Ark Angels VIII, LLC; Ark Investment Partners II, LP; ARK II CLO 2001-1, Ltd.; LD Investments, LLC; Octaluna LLC; Octaluna II, LLC; Octaluna III, LLC; Patriarch Partners, LLC; Patriarch Partners VIII, LLC; Patriarch Partners, XIV, LLC; Patriarch Partners XV, LLC; Patriarch Partners Management Group, LLC; Patriarch Partners Agency Services, LLC; Zohar Holdings, LLC.  (Ex. 2 (Settlement Order), Ex. B.)

approving a settlement agreement (the "Settlement Agreement") between the Zohar Funds, the

Patriarch Stakeholders (including Plaintiff), and other parties to the Bankruptcy Proceedings (the

"Settlement Order").[5]  The Settlement Order divided certain portfolio companies of the Zohar

Funds, including 180s, into groups, and ordered that such companies be monetized via sale or

refinancing (the "Monetization Process").  (Ex. 2 (Settlement Order), Ex. 1 ¶ 10.)  On March 9,

2020, the Zohar Funds commenced an adversary proceeding for which the complaint and

briefing remain under seal.  The management fee and indemnification obligations at issue in the

State Court Action are also the subject of this ongoing adversary proceeding.  The Monetization

Process is ongoing for 180s and other portfolio companies.

On July 14, 2020, Plaintiff commenced the State Court Action.  Plaintiff alleges that on

October 1, 2015, Plaintiff and 180s entered into a Management Services Agreement (the

"MSA"), under which Plaintiff was to provide management, operational consulting, and other

services to 180s.  (Ex. 1, Complaint ¶ 1.)  Plaintiff further alleges that 180s owes it a principal

balance of $2,691,694 (plus interest, attorney's fees, and other costs) for allegedly unpaid

management fees and indemnification obligations under the MSA.  (*Id.* ¶ 15.)  The allegedly

unpaid fees and obligations were invoiced between March 24, 2015 (prior to the execution of the

MSA) and March 31, 2020.  (*Id.* ¶ 8.)

The State Court Action is one of 17 lawsuits Plaintiff and its affiliates have filed in New

York Supreme Court since June 19, 2020, each asserting similar claims against 15 different

portfolio companies.  The successful monetization of 180s and the other portfolio companies is a

---

[5] Attached as <u>Exhibit 2</u> is a true and correct copy of the Bankruptcy Court's *Order Approving and Authorizing the Settlement Agreement By and Between the Patriarch Stakeholders, MBIA Insurance Corp., and the Zohar III Controlling Class.  In re Zohar III, Corp., et al.*, Case No. 18-10512, Dkt. No. 266 (Bankr. D. Del. May 21, 2018).

key component of the Bankruptcy Proceedings, and recent developments in the Bankruptcy Court demonstrate how the 17 state court actions are enmeshed in that process.  On August 4, 2020, the Bankruptcy Court held a hearing on the Zohar Funds' motion under the terms of the Settlement Agreement to stay the 17 state court actions, during which the Bankruptcy Court stated that "I agree" with the Zohar Funds that "the State Court suits are at odds with one of the stated purposes of these proceedings which is to centralize the disputes between the parties and maximize value."  (Ex. 3 at 85:12-16.)[6]  These disputes are at the core of the Monetization Process, as governed by the Settlement Order and subsequent orders of the Bankruptcy Court, the goal of which is "to sell the portfolio companies as soon as possible for the best price possible free and clear of the part[ies'] disputes and the claims and risks asserted against the portfolio companies by both the debtors and the Patriarch stakeholders."  (*Id*. at 86:12-20.)

The sole, narrow issue before the Bankruptcy Court was whether the Settlement Agreement, on its own, precluded the Patriarch Stakeholders from asserting the claims at issue here outside of the Bankruptcy Court.  While the Bankruptcy Court declined to hold that the Settlement Agreement precluded the state court actions from being heard elsewhere, the Bankruptcy Court stated that it believed it had "jurisdiction to oversee the lawsuits and perhaps stay them under Sections 105 and 362" of title 11 of the United States Code (the "Bankruptcy Code").  (*Id*. at 85:15-18.)  But the Bankruptcy Court, in an exercise of judicial restraint, declined to address such issues because "those particular issues are not before me today."  (*Id.* at 85:19.)

_____

[6] Attached as <u>Exhibit 3</u> is a true and correct copy of the transcript of the August 4, 2020 hearing before the Bankruptcy Court.  *In re Zohar III, Corp., et al.*, Case No. 18-10512, Dkt. No. 1864 (Bankr. D. Del. Aug. 6, 2020).

The Bankruptcy Court characterized the Settlement Agreement's mechanism for resolving disputes between the Zohar Funds and the Patriarch Stakeholders regarding the claims at issue in the State Court Action and 16 related actions as "pay first, fight later." (*Id.* at 86:11-12.) This approach does not apply to disputes and defenses raised by the portfolio companies themselves. The Bankruptcy Court then spoke to the process following the assertion of such claims, which is governed by "the four corners of the settlement agreement" (*id.* at 86:22-25) and "is required in light of the part[ies'] agreements in the settlement agreement and the monetization process order, and, quite frankly, to even make the process work" (*id.* at 91:1-4). The Bankruptcy Court noted that the agreed-upon tolling period for "challeng[ing] the asserted claims" has expired (*id.* at 86:22-25) and that, while "specific issues" regarding the process governed by the Settlement Agreement "are not in front of me today . . . there will be much more motion practice coming my way regarding the level of documentation to be provided" by the Patriarch Stakeholders regarding such claims (*id.* at 89:23-90:1).

"No one said that this case was going to be easy," the Bankruptcy Court emphasized, and "[n]o one said that these cases aren't novel and complex." (*Id.* at 90:1-5.) While these disputes may seem straightforward on their face, given how intricately they are interwoven with the Monetization Process, as governed by the terms of the Settlement Agreement, they are best resolved by the Bankruptcy Court itself. To that end, the Bankruptcy Court "reiterate[d] that I am prepared to decide any specific issues that are brought to me consistent with the settlement agreement and my general authority." (*Id.* at 90:7-9.)

## II.    BASIS FOR REMOVAL

Removal of the State Court Action to this Court is appropriate pursuant to 28 U.S.C. §§ 1334(b) and 1452 for three independent reasons. First, the State Court Action arises in the

Bankruptcy Proceedings; second, the State Court Action is related to the Bankruptcy

Proceedings; and third, the State Court Action is subject to the Bankruptcy Court's inherent

jurisdiction to interpret and enforce its orders regarding the Monetization Process.  Following

service of this Notice of Removal on Plaintiff, 180s intends to file a motion to transfer the case to

the United States District Court for the District of Delaware, where it may be referred to the

Bankruptcy Court and litigated as an adversary proceeding.  Removal of the State Court Action

is also appropriate pursuant to 28 U.S.C. §§ 1332(a) and 1441(a) on the basis of diversity

jurisdiction.

### A.    The State Court Action Arises in and Relates to the Bankruptcy Proceedings, and Is Subject to the Bankruptcy Court's Inherent Jurisdiction

#### 1.    Legal Standards

The United States District Courts "have original but not exclusive jurisdiction of all civil

proceedings . . . arising in or related to cases under" the Bankruptcy Code.  28 U.S.C. § 1334(b).

"A party may remove any claim or cause of action in a civil action other than a proceeding

before the United States Tax Court or a civil action by a governmental unit to enforce such

governmental unit's police or regulatory power, to the district court for the district where such

civil action is pending, if such district court has jurisdiction of such claim or cause of action

under [28 U.S.C. §] 1334."  28 U.S.C. § 1452.  Additionally, "[b]ankruptcy courts have inherent

or ancillary jurisdiction to interpret and enforce their own orders wholly independent of the

statutory grant of jurisdiction under 28 U.S.C. § 1334."  *In re Chateaugay Corp. v. Back*, 201

B.R. 48, 62 (Bankr. S.D.N.Y. 1996).

#### 2.    The State Court Action "Arises In" the Bankruptcy Proceedings

"Arising in" jurisdiction covers claims that "are not based on any right expressly created

by title 11, but nevertheless, would have no existence outside of the bankruptcy."  *Baker v.*

6

*Simpson*, 613 F.3d 346, 350-51 (2d Cir. 2010). "Arising in" jurisdiction "correspond[s] to the [Bankruptcy] Court's core bankruptcy jurisdiction." *In re DPH Holdings Corp.*, 437 B.R. 88, 94-95 (S.D.N.Y. 2010). "'[C]ore proceedings' should be given a broad interpretation." *In re U.S. Lines, Inc.*, 197 F.3d 631, 636-37 (2d Cir. 1999).

The claims at issue in the State Court Action are already the subject of an adversary proceeding that commenced on March 9, 2020. Additionally, this Court and the Second Circuit have been clear that "arising in" jurisdiction exists over contract disputes involving non-debtors where, as here, "the dispute involve[s] interpretation of the bankruptcy court's orders." *Lothian Cassidy, LLC v. Lothian Expl. & Dev. II, L.P.*, 487 B.R. 158, 162 (S.D.N.Y. 2013) (citing *In re Petrie Retail, Inc.*, 304 F.3d 223, 229-31 (2d Cir. 2002)). While Plaintiff's claims for management fees and indemnification obligations under the MSA may have constituted a standard contract dispute but for the existence of the Bankruptcy Proceedings, and while the Settlement Agreement on its own does not preclude Plaintiff from bringing the claims in state court, the claims arise in the Bankruptcy Proceedings nonetheless. Their resolution is governed by the orders of the Bankruptcy Court, including, but not limited to, the Settlement Order, orders regarding the Monetization Process, and any orders issued in connection with the motion practice the Bankruptcy Court expects in connection with these "novel and complex" disputes.

In determining the existence of "arising in" jurisdiction for contract disputes involving non-debtors, courts also consider "whether the contract is antecedent to the reorganization petition" and "the degree to which the proceeding is independent of the reorganization." *In re U.S. Lines*, 197 F.3d at 637. Here, while Plaintiff alleges the MSA was executed prior to the chapter 11 petition, many of the allegedly unpaid fees under the MSA were invoiced after the Bankruptcy Court issued the Settlement Order. The claims at issue here are not independent of

the Bankruptcy Proceedings, and indeed are the subject of an adversary proceeding pending

before the Bankruptcy Court.  And by agreeing to subject such claims to the mechanism of the

Settlement Agreement, Plaintiff converted them from straightforward claims that could exist

outside of the Bankruptcy Proceedings to claims that are inextricably linked to those

proceedings.  *See Lothian Cassidy*, 487 B.R. at 162-63 (where "the resolution of [a state court]

dispute depends, at least in part, on rights created by" a bankruptcy court's order, and "relief

depends on the interpretation of the terms of" the bankruptcy court's order, "[t]hese

considerations are more than sufficient to establish 'arising in' jurisdiction").

### 3.    The State Court Action Is "Related To" the Bankruptcy Proceedings

28 U.S.C. § 1334(b) confers an "extraordinarily broad grant of jurisdiction" to the federal

courts over "virtually all litigation in which a debtor or the estate could be expected have an

interest."  *Bond St. Assocs. v. Ames Dep't Stores*, 174 B.R. 28, 33-34 (S.D.N.Y. 1994).  An

action is "related to" a bankruptcy proceeding for purposes of federal jurisdiction upon any

showing that the action "might have any conceivable effect on the bankrupt estate."  *In re

Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d. Cir. 1992).  An action has a "conceivable effect"

upon the debtors' estate if "the outcome could alter the debtor's rights, liabilities, options, or

freedom of action (either positively or negatively) and which in any way impacts upon the

handling and administration of the bankrupt estate."  *In re Residential Capital, LLC*, 497 B.R.

720, 745 (Bankr. S.D.N.Y. 2013).  "To have a 'conceivable effect' on a bankruptcy estate,

certainty, or even likelihood, is not required."  *Id.*

The State Court Action easily meets this "extraordinarily broad grant of jurisdiction"

because the resolution of the underlying dispute will have numerous concrete effects on the

Zohar Funds' bankruptcy estate, which includes their interest in 180s, and the Monetization

Process.  State court suits affecting sales processes ordered by bankruptcy courts are related to

the proceedings before those bankruptcy courts.  *See, e.g., Winstar Holdings, LLC v. Blackstone Grp. L.P.*, 2007 WL 4323003, at *1 n. 1 (S.D.N.Y. Dec. 10, 2007) (finding "related to" jurisdiction over state court challenge to bankruptcy court-ordered sale because "the connection between this case and the bankruptcy is obvious: the sale that is the subject of the litigation was an aspect of the bankruptcy proceeding").  That is clearly the case here.

Furthermore, the resolution of Plaintiff's claims for recovery under the MSA will determine whether a claim of at least $2,691,694 (plus interest, attorney's fees, and other costs) dilutes the recovery of the Zohar Funds' estate once 180s is ultimately sold.  This, of course, has a direct effect upon the Zohar Funds' estate and liabilities.  *See SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 341 (2d Cir. 2018) (finding state law claims to be related to bankruptcy proceedings where, if plaintiff "were successful in its claims against" a non-debtor, "it would reduce the amount it is owed as a creditor of" the bankruptcy estate").

### 4.     The Bankruptcy Court Has Inherent Jurisdiction to Interpret and Enforce Its Own Orders

Jurisdiction over the State Court Action also exists because "[b]ankruptcy courts have inherent or ancillary jurisdiction to interpret and enforce their own orders wholly independent of the statutory grant of jurisdiction under 28 U.S.C. § 1334."  *In re Chateaugay Corp.*, 201 B.R. at 62.  As discussed above, 180s intends to move to transfer this action to the United States District Court for the District of Delaware, where it may be referred to the Bankruptcy Court and litigated as an adversary proceeding.  This case implicates the inherent jurisdiction of the Bankruptcy Court to oversee the Monetization Process, which has been the subject of numerous orders by the Bankruptcy Court.  The resolution of disputes such as these are governed by the four corners of the Settlement Order and are central to the goals of the Monetization Process. *See id.* ("[T]his Court has continuing jurisdiction to consider and determine the issues raised in

these Adversary Proceedings, by virtue of this Court's inherent jurisdiction to interpret and enforce its own orders.").

      **B.**     **The State Court Action Is Removable on the Basis of Diversity Jurisdiction**

"The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States."  28 U.S.C. § 1332(a)(1).  "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).  Here, the amount in controversy is $2,691,694.  Plaintiff is a citizen of Florida because "the citizenship of a limited liability company is determined by the citizenship of each of its members."  *Of a Feather, LLC v. Allegro Credit Servs., LLC*, 2020 WL 85411, at *1 (S.D.N.Y. Jan. 7, 2020).  180s is a citizen of Delaware and Maryland.  Thus, there is complete diversity between the parties and the State Court Action is removable on the basis of diversity jurisdiction.  *See Eisenberg v. New England Motor Freight, Inc.*, 564 F. Supp. 2d 224, 231 (S.D.N.Y. 2008) (finding removal from New York Supreme Court based on diversity jurisdiction to be proper where defendant and plaintiff had complete diversity of citizenship and defendant was not a citizen of New York).

## III.    PROCEDURAL REQUIREMENTS

Copies of the Summons and Complaint served on 180s in the State Court Action are attached as <u>Exhibit 1</u>.  This Notice of Removal is filed within 30 days of Plaintiff's service of the Summons and Complaint in the State Court Action, and is therefore timely pursuant to 28 U.S.C. § 1446(b).  This Notice of Removal is signed pursuant to Fed. R. Civ. P. 11.  180s has not pled, answered, or otherwise appeared in the State Court Action.  180s will promptly serve a copy of

this Notice of Removal on Plaintiff and file with the Clerk of the Supreme Court of the State of New York, New York County a Notice of Filing of Notice of Removal pursuant to 28 U.S.C. § 1446(d).  The Supreme Court of the State of New York, New York County, is within the geographical boundaries of the United States District Court for the Southern District of New York.  *See* 28 U.S.C. § 112(b).

In accordance with the requirements of Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 9027(a)(1), 180s asserts that, upon removal, the cause of action asserted in the State Court Action is a core proceeding under 28 U.S.C. § 157(b) and Bankruptcy Rule 9027. 180s reserves the right to file a supplemental statement in support of its right to have federal jurisdiction maintained over the claims asserted against it.  By removing this matter, 180s does not waive, and expressly preserves, any and all defenses that it may have in the State Court Action.

## IV.    CONCLUSION

WHEREFORE, 180s removes this action in its entirety from the Supreme Court of New York, New York County, to the United States District Court for the Southern District of New York for the reasons stated above, or for any other reasons the Court deems necessary and proper.

Dated: August 26, 2020
      Greenwich, Connecticut

                        Respectfully submitted,

                        LATHAM & WATKINS LLP

                        By: /s/ Christopher J. Clark
                              Christopher J. Clark
                              885 Third Avenue
                              New York, New York  10022
                              Tel: (212) 906-1200
                              Fax: (212) 751-4864
                              Email: chris.clark@lw.com

                              *Attorneys for Defendant 180s, Inc.*